UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY JAMISON,<br><br>        Plaintiff,<br><br>   v.<br><br>BAILLIE, et al.,<br><br>        Defendants. | No. 2:10-cv-124-KJM-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

    Plaintiff is a state prisoner proceeding through counsel in an action brought under 42 U.S.C. § 1983.[1] The matter was before the court on December 9, 2015 for hearing on defendants' motion for summary judgment, arguing *inter alia*, that plaintiff failed to exhaust administrative remedies before filing suit and that plaintiff's rights under the Americans with Disabilities Act were not violated. Deputy Attorney General David Carrasco appeared on behalf of defendants; Attorney Kevin Schwin appeared telephonically on behalf of plaintiff. As stated on the record, and for the reasons stated below, it is recommended that defendants' motion for summary judgment be granted.

/////

/////

/////

---

[1] Plaintiff is a transsexual and describes herself using female pronouns.

1

## I.      Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures.  Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own.  When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

1  which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-
2  24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a
3  summary judgment motion may properly be made in reliance solely on the 'pleadings,
4  depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment
5  should be entered, after adequate time for discovery and upon motion, against a party who fails to
6  make a showing sufficient to establish the existence of an element essential to that party's case,
7  and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a
8  circumstance, summary judgment must be granted, "so long as whatever is before the district
9  court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

3

that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted); *Celotex*, 477 U.S. at 323 (if the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue). Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

## II.     Failure to Exhaust Administrative Remedies

### a.     Exhaustion under the PLRA

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions [under section 1983 of this title] until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" subject to the exhaustion requirement have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2); *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002). To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint, but need only provide the level of detail required by the grievance system itself. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case").

Prisoners who file grievances must use a form provided by the California Department of Corrections and Rehabilitation, which instructs the inmate to describe the problem and outline the action requested. The grievance process, as defined by California regulations, has three levels of review to address an inmate's claims, subject to certain exceptions. *See* Cal. Code Regs. tit. 15, § 3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. *Id.* § 3084.1(b).

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). For a remedy to be "available," there must be the "possibility of some relief . . . ." *Booth*, 532 U.S. at 738. Relying on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). To bear this burden:

> a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case . . . . With regard to the latter category of evidence, information provided [to] the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

*Brown*, 422 F.3d at 936-37 (citations omitted).

If under the Rule 56 summary judgment standard, the court concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120, *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc).

5

**b. Discussion**

Plaintiff's claims arise from the following allegations: (1) that defendant Johnson forced plaintiff to climb up a flight of stairs despite knowing of plaintiff's mobility issues; (2) that defendant Bailey refused to summon medical care to treat an asthma attack that nearly killed plaintiff; (3) that defendants Johnson and Shaid threatened plaintiff to withdraw grievances concerning the forced use of stairs and refusal to summon medical care for the asthma attack; and (4) that defendants the State of California and CDCR are liable under the Americans with Disabilities Act for defendant Johnson's forced use of stairs.  *See* ECF No. 216.

Plaintiff initially asserted the claims against defendants Bailey, Johnson, and Shaid in a pro se amended complaint, filed July 26, 2010.[2]  ECF No. 39.  That complaint did not include the claims against the State and CDCR, who were not added as defendants until plaintiff filed a second amended complaint, through counsel, on September 22, 2011.  ECF No. 141. Accordingly, the court must determine: (1) whether plaintiff exhausted her administrative remedies regarding her claims against Bailey, Johnson, and Shaid prior to July 26, 2010; and (2) whether plaintiff exhausted her administrative remedies regarding her claims against the State and CDCR prior to September 22, 2011.  *See Cano v. Taylor*, 739 F.3d 1214, 1220 (9th Cir. 2014) (new claims added to a lawsuit via amendment that are exhausted prior to the amendment comply with the exhaustion requirement); *Rhodes v. Robinson*, 621 F.3d 1002 (9th Cir. 2010) (exhaustion requirement is satisfied so long as new claims asserted in supplemental complaint are exhausted before complaint is tendered to the court for filing).[3]  If plaintiff did not exhaust her

---

[2] Defendants urge the court to treat the filing date of this complaint as July 21, 2010, the date that plaintiff signed it.  *See* ECF No. 233 at 15 (citing *Houston v. Lack*, 487 U.S. 266, 276 (1988) (prisoner's notice of appeal deemed timely filed on the date it was delivered to prison staff for delivery to the court)).  Plaintiff's signature, however, is not accompanied by a certificate of service or any other indicator showing when the complaint was actually delivered to prison staff for mailing.  Thus, there is no evidentiary basis for applying *Houston*'s "mailbox rule" to corroborate an earlier filing date for this complaint.

[3] Plaintiff, citing *Rhodes*, argues that she may cure any failure to exhaust by re-alleging previously unexhausted claims in a subsequent complaint once those claims are exhausted.  ECF No. 231 at 11.  This argument cannot be reconciled with Ninth Circuit precedent, which makes clear that if a prisoner exhausts a claim after bringing it before the court, its subsequent exhaustion cannot excuse the earlier failure to exhaust.  *See Vaden v. Summerhill*, 449 F.3d 1047,

1   administrative remedies prior to these dates, the court must determine whether plaintiff may be
2   excused from the pre-filing exhaustion requirement.  *See Sapp v. Kimbrell*, 623 F.3d 813, 823-24
3   (9th Cir. 2010).

### i.  Plaintiff's Claims Against Defendants Bailey, Shaid, and Johnson

Plaintiff concedes that the administrative remedies with respect to her claims against defendants Bailey, Shaid, and Johnson were not exhausted as of July 26, 2010.  *See* ECF No. 231 at 11 (". . . Plaintiff concedes, as she must, that the grievances against Johnson and Shaid were still in the first level of formal review as of July 26, 2010" and that her "grievance against Officer Bailey had been withdrawn as of July 26, 2010 . . . .").  In light of these concessions, it must be determined if there is a genuine dispute over a material issue of fact as to whether she should be excused from the exhaustion requirement.

Plaintiff argues that her failure to exhaust should be excused because defendants effectively rendered her administrative remedies unavailable through their threats of retaliation.  ECF No. 231 at 12.  Indeed, "[t]he threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable and thereby excuse a prisoner's failure to exhaust administrative remedies."  *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015).  Here, however, plaintiff fails to produce evidence creating a triable issue as to whether any threats of retaliation rendered the prison grievance process effectively unavailable to her.

The record shows that on June 28, 2010, plaintiff filed an administrative appeal regarding her claim against defendant Johnson for forcing her to use the stairs, and that on July 4, 2010, plaintiff filed an administrative appeal against defendant Bailey for refusing to summon medical care.  ECF No. 231-1, ¶¶ 11, 19, Exs. 1, 2.  Plaintiff states that on July 19, 2010, defendant Shaid told her she was sticking her hand in a "hornet's nest" by pursuing the appeal against Bailey and that she would "get stung real bad."  *Id.* ¶ 21.  Plaintiff claims she withdrew her July 4 appeal

---

1051 (9th Cir. 2006); *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) (a prisoner does not comply with exhaustion requirement by exhausting available remedies during the course of litigation).  Indeed, "[t]o hold that amendment can rescue unexhausted claims would render *McKinney* and *Rhodes* irrelevant."  *Siguenza v. Cotero*, No. 11cv1241-BEN, 2012 U.S. Dist. LEXIS 105192, at *11 (S.D. Cal. June 6, 2012) ("Plaintiff cannot rescue his unexhausted claim through amendment.").

1  against Bailey because of Shaid's threat. *Id.* ¶ 21, Ex. 3.  Around the same time, Johnson
2  allegedly set up plaintiff to look like a snitch by showing her pictures of gang members in the
3  presence of other inmates, and told her to "see what happens" if she did not withdraw her June 28
4  grievance. *Id.* ¶ 22.  Even crediting plaintiff's version as to these facts, it is undisputed that
5  despite this threat, she did not withdraw the June 28 grievance.  Instead, she promptly filed
6  another administrative appeal, dated July 22, 2010.  And significantly, that appeal complained
7  about Shaid's alleged interference with plaintiff's appeal against Bailey and requested that the
8  warden "deal" with the event involving Bailey and the 602 that she "was forced to withdraw." *Id.*
9  ¶ 23; *see also id.*, Ex. 4.  The appeal also complained about Johnson's alleged threat of retaliation.
10 *Id.* ¶ 23; Ex. 4.  On July 26, 2010, rather than awaiting the outcome of either the June 28 or the
11 July 22 appeal, plaintiff asserted her claims against Bailey, Shaid, and Johnson in this court.[4]
12 ECF No. 39.  These facts hardly show that any of the alleged threats of retaliation rendered the
13 prison grievance process effectively unavailable to plaintiff.

14       Plaintiff's filing of the July 22 administrative appeal, just days after the purported threats
15 came from defendants Shaid and Johnson, shows that (1) plaintiff was not deterred by the alleged
16 threats of retaliation, and (2) that administrative remedies were available to plaintiff prior to filing
17 suit. *See McBride*, 807 F.3d at 986) ("[t]o show that a threat rendered the prison grievance
18 system unavailable, a prisoner must provide a basis for the court to find that he actually believed
19 prison officials would retaliate against him if he filed a grievance."); *Pelayo v. Hernandez*,
20 No. C 13-3618-RMW, 2015 U.S. Dist. LEXIS 105521, at *21-23 (N.D. Cal. Aug. 11, 2015)
21 (where inmate filed grievance within a week after an alleged threat, he had not shown that he was
22 "actually deterred" from filing a grievance such that administrative remedies could be deemed
23 unavailable).  Thus, there is no genuine dispute as to whether the prison's grievance system was
24 rendered effectively unavailable by the purported threats from defendants Shaid and Johnson.
25 /////

---

[4] Under then existing regulations, the first level responses to plaintiff's appeals were due "within 30 working days from date of receipt by the appeals coordinator." Cal. Code Regs. tit. 15, § 3084.8(c)(1) (2010).  Thus, plaintiff filed her July 26, 2010 complaint with the court before any response to her appeals came due.

Plaintiff also argues that the appeals process became impracticable, pointing out that three days before filing the complaint, she was transferred to New Hampshire for a court appearance, where she remained until November 2010. ECF No. 231-1, ¶ 24. She claims that during this time she had no practical means of pursuing her grievances. *Id.*; ECF No. 231 at 14 (citing *Almond v. Tarver*, 468 F. Supp. 2d 886, 896-897 (E.D. Tex. 2006) (suggesting that under such a scenario, administrative remedies are excused because the appeals process is "impracticable")). Plaintiff's argument lacks merit, as there is no indication that her move to New Hampshire caused her administrative remedies to be "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile" at the time she filed her complaint. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015); *see also Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005). By the time plaintiff left for New Hampshire she had successfully filed two administrative appeals that were pending at the first level of review. At that point, her only responsibility was to await the prison's responses. Instead of waiting, plaintiff circumvented the administrative process by filing her complaint before those responses came due. The Ninth Circuit has made clear that the primary purpose of an administrative appeal is "to notify the prison of a problem." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). Plaintiff's swift action in filing her complaint without allowing time for a response from prison officials did not offer the prison a fair opportunity to respond to the claims she now asserts in this action. *See also Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . .").

Even if the transfer to New Hampshire ultimately prolonged the appeals process for plaintiff, that delay occurred only after plaintiff prematurely filed suit, and cannot excuse her initial failure to comply with the prison's regulations governing administrative appeals. *See Watts v. Nguyen*, No. 1:13-cv-0917-AWI-SKO, 2015 U.S. Dist. LEXIS 97737, at *23-24 (E.D. Cal. July 27, 2015) ("Plaintiff filed suit prior to prison officials' response deadline and the fact that they subsequently failed to deliver a timely response cannot be relied upon to save what was a prematurely filed lawsuit."); *Voth v. Lytle*, No. CV 05-1360-KI, 2006 U.S. Dist. LEXIS 100046

/////

1  (D. Or. Jan. 19, 2006) (where plaintiff failed to show that his "out to court" status prevented him
2  from filing a timely appeal, his failure to exhaust could not be excused).

3  For these reasons, undisputed facts demonstrate that despite plaintiff's conclusory
4  allegations to the contrary, her administrative remedies with respect to her claims against
5  defendants Bailey, Shaid, and Johnson were neither exhausted nor unavailable as of July 26,
6  2010. Accordingly, plaintiff's claims against these defendants must be dismissed without
7  prejudice as unexhausted.

### ii. Plaintiff's Claim Against the State and CDCR

9  Plaintiff's claim against the State and CDCR is based upon her allegation that defendant
10 Johnson forced her to use the stairs notwithstanding her mobility issues. Defendants' evidence
11 shows that plaintiff initially appealed this issue in her June 28, 2010 appeal, and that the appeal
12 was partially granted at the first level of review on December 2, 2010. ECF No. 220-7, ¶ 4, Ex.
13 F. There is no indication that plaintiff attempted to pursue this appeal beyond the first level of
14 review. *Id.*, Ex. F; ECF No. 220-8, ¶ 4. Plaintiff argues she did not need to pursue further
15 administrative relief because she received a favorable outcome at the first level. ECF No. 231 at
16 14. Indeed, "[a]n inmate has no obligation to appeal from a grant of relief, or a partial grant that
17 satisfies him, in order to exhaust his administrative remedies." *Harvey v. Jordan*, 605 F.3d 681,
18 684-85 (9th Cir. 2010). In addition, a prisoner is "not required to 'exhaust further levels of
19 review once he [has] . . . been reliably informed by an administrator that no remedies are
20 available,'" *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) (per curiam) (quoting
21 *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005)).

22 Plaintiff's appeal requested that "some type of action" be taken against the officers who
23 forced her to climb the stairs. ECF No. 231-1, Ex. 1. The first level response stated that the
24 appeal was processed as a staff complaint and partially granted to the extent that an "inquiry" was
25 conducted. ECF No. 220-7, Ex. F. The response informed plaintiff that the details of the
26 "inquiry" were "confidential in nature" and that a "request for administrative action regarding
27 staff . . . [was] beyond the scope of the staff complaint process." *Id.* The response went on,
28 informing plaintiff that the inquiry was complete upon a finding that "[s]taff did violate CDCR

1  policy with respect to one or more of the issues raised." *Id.* Plaintiff avers that she was satisfied
2  with this outcome and had obtained all the relief that was available to her through the
3  administrative process. ECF No. 231-1, ¶ 27.
4        Under these circumstances, the court finds that plaintiff was not required to seek further
5  administrative review in order to exhaust her administrative remedies. *See Harvey*, 605 F.3d at
6  684-85; *Brown*, 422 F.3d at 935. In determining that plaintiff's request for "action" was "beyond
7  the scope of the staff complaint process," the first level response reliably informed plaintiff that
8  no administrative remedies were available with respect to her request that "some type of action"
9  be taken against prison officials. The first level response also reliably informed plaintiff that her
10 appeal was otherwise granted, in that an inquiry was conducted, revealing that staff had violated
11 policy as charged by plaintiff, and that nothing further would be shared with plaintiff due to the
12 confidential nature of staff complaints. Plaintiff had no obligation to appeal from this partial
13 grant of relief. Accordingly, defendants' failure to exhaust argument must be rejected as to this
14 claim and it will be addressed on its merits.

15     **III.**    **Merits of Plaintiff's Claim Against the State and CDCR**

16       Plaintiff's Americans with Disabilities Act ("ADA") claim, as alleged in her complaint
17 and based upon the evidence submitted with her opposition, consists of the following:[5] In April
18 of 2010, plaintiff walked with a limp and experienced pain and swelling in her knee. As a result,
19 a doctor listed her as "ADA restricted" and issued a cane and knee sleeve. The doctor also
20 ordered accommodations of a bottom bunk and a ground floor cell, because climbing to a top
21 bunk and/or climbing stairs could cause injury.
22       In June of 2010, defendant Johnson called plaintiff into a meeting and ordered plaintiff to
23 walk up a steep flight of stairs to meet with him. At the time, plaintiff was walking with a cane
24 and limping. At the bottom of the stairs large signs were posted conspicuously stating "No ADA
25 inmates allowed upstairs." Nevertheless, Johnson ordered plaintiff up the stairs. Plaintiff
26 complied, but had a great deal of difficulty climbing the stairs and was in severe pain. When

---

[5] For purposes of this discussion, the court views the facts in the light most favorable to plaintiff.

11

plaintiff informed Johnson that she was in severe pain and needed help, Johnson replied, "Oh, you can make it," and did not offer her any help. When plaintiff got to the top of the stairs, another officer asked something to the effect of "Who brought you up here with that sign down there and that cane?"

Plaintiff claims that the State of California and CDCR are liable under the ADA for defendant Johnson's act of forcing plaintiff to use the stairs. Defendants move for summary judgment on the ground that neither the State nor CDCR violated plaintiff's rights under the ADA because they did not deprive plaintiff of any service, program, or activity solely on account of her disability.

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. 42 U.S.C. § 12132. In order to state a claim that a public program or service violated Title II of the ADA, a plaintiff must show: (1) she is a "qualified individual with a disability"; (2) she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) ("If a public entity denies an otherwise 'qualified individual' 'meaningful access' to its 'services, programs, or activities' 'solely by reason of' his or her disability, that individual may have an ADA claim against the public entity."). If the plaintiff does not allege, or cannot prove, that the public entity's challenged actions were solely because of his disability, then the plaintiff has no claim under Title II of the ADA. *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978-79 (9th Cir. 1997); *see also Johnson v. Thompson*, 971 F.2d 1487, 1493 (10th Cir. 1992) (discrimination must result "from the handicap and from the handicap alone."). "A plaintiff asserting a private cause of action for violations of the ADA . . . may only recover compensatory damages upon a showing of intentional discrimination," *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002), and cannot assert a claim based on an isolated act of negligence. *Foley v. City of Lafayette*, 359 F.3d 925, 930-31 (7th Cir. 2004); *see also Moore v.*

*Curtis*, 68 F. App'x 561, 563 (6th Cir. 2003) (allegation of isolated instances of failing to accommodate disabled prisoner's condition does not state a claim under the ADA).

Defendants argue they are entitled to summary judgment because there is no evidence that plaintiff was deprived of any service, program, or activity within the meaning of the ADA. Plaintiff responds, without citation to any legal authority, that the "service, program or activity" she was denied was "the right to be free from climbing stairs." ECF No. 231 at 17. Incarceration itself is not a program or activity, but other activities, like "meals and showers made available to inmates" are programs or activities. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Plaintiff's evidence shows an isolated instance of having to climb a flight of stairs. It does not show that plaintiff was prevented from participating in or receiving the benefits of any service, program, or activity. *See, e.g., Shabazz v. Schofield*, 2013 U.S. Dist. LEXIS 25969, at *22-23 (M.D. Tenn. Feb. 26, 2013) (prison's failure to accommodate plaintiff's inability to walk up or down stairs does not demonstrate that prison ever prevented plaintiff from accessing services, programs, or activities for purposes of ADA); *Alvarado v. Ramineni*, 2010 U.S. Dist. LEXIS 73828, at *17-18 (N.D.N.Y. Mar. 15, 2010), *adopted by* 2010 U.S. Dist. LEXIS 73855 (N.D.N.Y. July 22, 2010) (inmate's discomfort in climbing stairs does not demonstrate exclusion from participating in or receiving the benefits of any service, program, or activity for purposes of ADA); *Lucas v. Ga. Corr. Health Care*, CV 104-081, 2006 U.S. Dist. LEXIS 17755, at *29-30 (S.D. Ga. Feb. 3, 2006), *adopted by* 2006 U.S. Dist. LEXIS 17775 (S.D. Ga. Mar. 28, 2006) (evidence that disabled plaintiff must take painful walks to reach various parts of the prison does not demonstrate that he has been denied access to any of the benefits of any prison program, service, or activity); *compare with Jaros*, 684 F.3d at 672 (ADA claim properly alleged where defendant's refusal to accommodate disability "kept [plaintiff] from accessing meals and showers on the same basis as other inmates."). Thus, there is no genuine dispute as to whether plaintiff was deprived of any service, program, or activity within the meaning of the ADA and defendants are entitled to summary judgment on this basis.

Defendants also argue that even if plaintiff was deprived of a service, program, or activity, it was not solely on account of any disability. Indeed, Title II of the ADA requires intentional

13

discrimination. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). To be clear, "[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo Cnty, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . . The ADA does not create a remedy for medical malpractice.")). Plaintiff does not produce any evidence of a discriminatory intent; her evidence merely shows an isolated instance in which a prison official failed to adequately respond to her medical needs. *See Ivory v. Miranda*, No. 2:12-cv-2902 AC P, 2014 U.S. Dist. LEXIS 5424, at *15-16 (E.D. Cal. Jan. 15, 2014), *adopted by* 2014 U.S. Dist. LEXIS 29893 (E.D. Cal. Mar. 5, 2014) (distinguishing instances of inadequate responses to medical needs from acts of discrimination in violation of the ADA); *Calbart v. Denver Sheriff Dep't*, No. 10-cv-01385-LTB-CBS, 2012 U.S. Dist. LEXIS 51293, at *27-28 (D. Colo. Feb. 23, 2012), *adopted by* 2012 U.S. Dist. LEXIS 51290 (D. Colo. Apr. 12, 2012) (interference with a treatment regime prescribed by a physician does not constitute discrimination for purposes of the ADA). Because plaintiff fails to produce any evidence showing that defendant Johnson forced her to climb the stairs *because o*f her disability, summary judgment must be granted in favor of defendants. *See, e.g., Alston v. Cnty of Sacramento Sheriff's Dep't*, No. 2:13-cv-1488 DAD P, 2015 U.S. Dist. LEXIS 147738 (E.D. Cal. Oct. 29, 2015) (adopted on Jan. 7, 2016) (allegations that defendants forced plaintiff to climb stairs, knowing that plaintiff was in pain and needed a knee brace following a recent surgery, did not demonstrate that "defendants discriminated against him or treated him differently *because of* a disability," as required by the ADA); *Calbart*, 2012 U.S. Dist. LEXIS 51293 (granting defendants' motion for summary judgment on plaintiff's ADA claim where there was no evidence that plaintiff "suffered any discrimination in accessing programs, activities or services" when defendant assigned plaintiff to a second tier knowing that plaintiff's knee condition prevented him from climbing stairs); *Smith v. Williams*, No. H-09-1025, 2010 U.S. Dist. LEXIS 136850, at *23 (S.D. Tex. Dec. 27, 2010) (dismissing plaintiff's ADA claim because forcing plaintiff to hop down the stairs on one leg and to stand on one leg while being searched even though plaintiff had been issued crutches for a knee injury did not amount to

discrimination under the ADA); *Burgess v. Goord*, 98 Civ. 2077, 1999 U.S. Dist. LEXIS 611, at *21 (S.D.N.Y. Jan. 26, 1999) (dismissing ADA claim where disabled inmate's forced use of the stairs made it more difficult for him to attend [recreation yard and religious services], but was "not tantamount to stating a claim of exclusion or discrimination.").

### IV.    Recommendation

For the reasons stated herein, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF Nos. 220, 221) be granted, that judgment be entered in defendants' favor, and that the case be closed.[6]

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 29, 2016.

/s/ Edmund F. Brennan
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[6] In light of this recommendation, the court need not address defendants' alternative arguments for summary judgment.

15